UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TYRONE WILLIAMS,

          Petitioner,               Case No. 1:23-cv-262

v.                                         Hon. Hala Y. Jarbou

BRYAN MORRISON,

          Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2241.[1] Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After

---

[1] Although Petitioner brings his action under § 2241, habeas corpus actions brought by "a person in custody pursuant to the judgment of a State court" are governed by 28 U.S.C. § 2254. *Id.* Section 2254 "allows state prisoners to collaterally attack either the imposition *or* the execution of their sentences[.]" *Bailey v. Wainwright*, 951 F.3d 343, 348 (6th Cir. 2020) (Stranch, J., dissenting) (quoting *Allen v. White*, 185 F. App'x 487, 490 (6th Cir. 2006)); *see also Rittenberry v. Morgan*, 468 F.3d 331, 336-37 (6th Cir. 2006). As a consequence, Petitioner's filing is subject to all of the requirements that apply to a petition filed under § 2254. Moreover, § 2241 petitions by state prisoners are subject to the rules governing § 2254 petitions. *See* Rule 1(b), Rules Governing § 2254 Cases.

undertaking the review required by Rule 4, the Court will dismiss the petition for failure to raise a meritorious federal claim.

## Discussion

Petitioner Tyrone Williams is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Petitioner is currently serving numerous sentences imposed by various circuit courts in 1987, 1985, 1984, 1983, and 1981. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=167128 (last visited Apr. 14, 2023). Notably, Petitioner is serving two life sentences for armed robbery and first-degree murder imposed by the Kent County Circuit Court in 1981. *See id.* Petitioner, however, does not challenge his convictions and sentences in his habeas petition. Instead, Petitioner challenges various conditions of confinement, alleging that those conditions subject him to an unreasonable risk of contracting COVID-19.

According to Petitioner, he is "uniquely vulnerable" to contracting COVID-19, as well as its "long-haul effects," while in MDOC custody. (Pet., ECF No. 1, PageID.7.) Petitioner suggests that because of his vulnerability, he should be "immediate[ly] release[d] from further detention as a reformed and repentive [sic] prisoner." (*Id.*, PageID.8.) Petitioner has hyperthyroidism, a condition that "is the result of an overactive thyroid that produced excessive hormones." (*Id.*, PageID.10.) According to Petitioner, his condition can lead to "an irregular heartbeat, tiredness, and rapid weight loss." (*Id.*, PageID.11.) It can also lead to thyroid cancer. (*Id.*)

Petitioner first contracted COVID-19 on December 27, 2020, while confined at the Earnest C. Brooks Correctional Facility. (*Id.*) Plaintiff contends that he was placed in a unit with prisoners

who had tested positive for COVID-19, leading him to contract the virus. (*Id.*) Petitioner asked to be moved to another unit, but guards refused. (*Id.*, PageID.12.)

Petitioner was transferred to the Richard A. Handlon Correctional Facility on November 23, 2021. (*Id.*) He was placed in a unit with prisoners who had tested positive for COVID-19. (*Id.*) Petitioner alleges that he contracted the virus again and experienced numerous symptoms, including fever, chills, nausea, dizziness, and ongoing diarrhea. (*Id.*) During that time, Petitioner received multi-vitamins. (*Id.*)

On July 26, 2022, Petitioner was transferred to the Lakeland Correctional Facility and was placed in a "dormitory-like setting." (*Id.*, PageID.12–13.) Petitioner avers that his unit had five cubicles, each of which housed eight prisoners. (*Id.*, PageID.13.) Prisoners slept "on bunk beds that are stacked on top of each other." (*Id.*) Petitioner alleges that prisoners "are stacked so close to each other that it is like sardines in a can, and thus[] making it impossible to practice any kind of social distancing." (*Id.*)

On January 5, 2023, staff at Lakeland quarantined Petitioner and other inmates from his housing unit because of a COVID-19 outbreak. (*Id.*, PageID.20.) A day later, Plaintiff was given a COVID-19 nose swab. (*Id.*) On January 7, 2023, Officer Speaker ordered Plaintiff to sit on his bed until formal count was done. (*Id.*) Petitioner contends that he disobeyed the order because he "had to urinate badly and could not hold it any longer." (*Id.*) Petitioner was moved to segregation "for creating a disturbance and disobeying a direct order." (*Id.*, PageID.21–22.) Petitioner, however, contends that he requested to be moved to temporary segregation because he refused to stay in a unit with inmates who had tested positive for COVID-19. (*Id.*, PageID.22.)

Petitioner suggests that none of these facilities are designed to deal with a virus outbreak and are, in fact, "very dangerous places for an outbreak." (*Id.*, PageID.13–14.) He claims that

health care officials at Lakeland did not conduct regular COVID-19 testing. (*Id.*, PageID.14.) According to Petitioner, he is subjected to "ongoing conditions of confinement that heighten[] his risk of contracting COVID-19 that could lead to his death." (*Id.*) As relief, Petitioner requests that the Court declare his "detention be unlawful and unconstitutional (due to his repentive [sic] and reformed nature)" and order either his immediate release or "his placement in a community in his hometown of Milwaukee, Wisconsin." (*Id.*, PageID.20.) In the alternative, Petitioner requests that the Court order Respondent to provide him with protection from contracting COVID-19 "by ameliorating all conditions that prevent Petitioner from implementing the public health recommendations that are the only known means of preventing against and mitigating the effects of COVID-19." (*Id.*)

Petitioner's request for relief is not a typical habeas petition. The Supreme Court has made clear that constitutional challenges to the fact or duration of confinement are the proper subject of a habeas corpus petition rather than a complaint under 42 U.S.C. § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973). Constitutional challenges to the conditions of confinement, on the other hand, are proper subjects for relief under 42 U.S.C. § 1983. *Id.* The *Preiser* Court, however, did not foreclose the possibility that habeas relief might be available even for conditions of confinement claims:

> This is not to say that habeas corpus may not also be available to challenge such prison conditions. *See Johnson v. Avery*, 393 U.S. 483, (1969); *Wilwording v. Swenson, supra*, at 251 of 404 U.S. . . . When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal. *See* Note, Developments in the Law—Habeas Corpus, 83 Harv. L. Rev. 1038, 1084 (1970).[]

*Preiser*, 411 U.S. at 499 (footnote omitted). The Court, however, has also never upheld a "conditions of confinement" habeas claim. Indeed, in *Muhammad v. Close*, the Court acknowledged that it had "never followed the speculation in *Preiser* . . . that such a prisoner subject

4

to 'additional and unconstitutional restraints' might have a habeas claim independent of § 1983." *Muhammad v. Close*, 540 U.S. 749, 751 n.1 (2004).

The United States Court of Appeals for the Sixth Circuit has concluded that claims regarding conditions of confinement are properly brought under § 1983 and are not cognizable on habeas review. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("Petitioner in this case appears to be asserting the violation of a right secured by the federal Constitution or laws by state prison officials. Such a claim is properly brought pursuant to 42 U.S.C. § 1983."); *In re Owens*, 525 F. App'x 287, 290 (6th Cir. 2013) ("The criteria to which Owens refers involves the conditions of his confinement. . . . This is not the proper execution of sentence claim that may be pursued in a § 2254 petition."); *Hodges v. Bell*, 170 F. App'x 389, 392–93 (6th Cir. 2006) ("Hodges's complaints about the conditions of his confinement . . . are a proper subject for a § 1983 action, but fall outside of the cognizable core of habeas corpus relief."); *Young v. Martin*, 83 F. App'x 107, 109 (6th Cir. 2003) ("It is clear under current law that a prisoner complaining about the conditions of his confinement should bring suit under 42 U.S.C. § 1983.").

Petitioner's claims regarding the constitutionality of his confinement due to the risks posed by the COVID-19 virus appear, on their face, to be claims regarding the conditions of his confinement. Such claims should typically be raised via a complaint pursuant to 42 U.S.C. § 1983. In fact, Petitioner did file a § 1983 raising such claims for relief in 2021. *See* Compl., *Williams v. Washington*, No. 1:21-cv-57 (W.D. Mich.) (ECF No. 1).[2]

---

[2] The Court did not address the merits of Petitioner's claims in his civil rights action. Instead, in an opinion and order entered on March 23, 2021, the Court denied Petitioner leave to proceed *in forma pauperis* because he had accrued three "strikes" and had not demonstrated imminent danger of serious physical injury under 28 U.S.C. § 1915(g). *See* Op. & Ord., *Williams v. Washington*, No. 1:21-cv-57 (W.D. Mich.) (ECF Nos. 4, 5). The Court directed Petitioner to pay the full $402.00 filing fee. Petitioner did not; therefore, the Court dismissed his action without prejudice on May 11, 2021. *See* Ord. & J., *Williams v. Washington*, No. 1:21-cv-57 (W.D. Mich.) (ECF Nos. 9, 10).

Nonetheless, in this action, Petitioner seeks release from custody. Such relief is available only upon habeas corpus review. The Supreme Court has held that release from confinement—the remedy petitioner[] seek[s] here—is 'the heart of habeas corpus.'" *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (quoting *Preiser*, 411 U.S. at 498).[3] A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser*, 411 U.S. at 484 (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).

In *Wilson*, the Sixth Circuit stated: "[o]ur precedent supports the conclusion that where a petitioner claims that no set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement." *Wilson*, 961 F.3d at 838. Petitioner, like the petitioner in *Wilson*, suggests there are no conditions of confinement sufficient to prevent irreparable injury while he continues to be confined by the MDOC. Accordingly, the Court construes his claim as a proper claim for habeas relief.

However, because Petitioner has chosen to pursue relief by way of a habeas petition, the available relief is circumscribed. *Id.* at 837. Even if there may be conditions of confinement short of release that would mitigate the risk and eliminate the conditions of which Petitioner complains, it is not within this Court's habeas jurisdiction to grant such relief. *Id.* Thus, Petitioner's alternative request for relief--that the Court order Respondent to provide him with protection from contracting COVID-19 "by ameliorating all conditions that prevent Petitioner from implementing the public health recommendations"—is not available in a habeas action.

---

[3] The petitioners in *Wilson* were federal inmates who asserted habeas claims pursuant to 28 U.S.C. § 2241, claiming entitlement to release because of the intolerable conditions of confinement they faced because of the COVID-19 pandemic.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is

7

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Furthermore, because Petitioner has raised his Eighth Amendment claim by way of a habeas petition, he must make the additional showing that there are no conditions of confinement sufficient to prevent irreparable injury. That is a particularly difficult showing where Petitioner has already contracted COVID-19 twice and, therefore, has twice realized the risk he contends would irreparably injure him.

Petitioner avers that he is medically vulnerable because of his hyperthyroidism and suggests that COVID-19 is, therefore, life-threatening. Petitioner, however, offers no facts in his petition regarding the present conditions of his confinement. Instead, he specifically focuses on conditions of confinement that he has faced in the past. Although currently confined at DRF, Petitioner has even named as the Respondent the Warden of Lakeland, where Plaintiff was previously confined. Put differently, Petitioner has failed to allege that his present conditions of confinement warrant the extraordinary relief he seeks.

The Court understands Petitioner's concerns about contracting COVID-19 for a third time. The risk posed by the COVID-19 virus has changed, however, since Petitioner filed his § 1983 action in 2021. Vaccines are now available that greatly reduce the risk of serious medical harm

from COVID-19 infection. Petitioner's own exhibits indicate that he received his initial COVID-19 vaccines in 2021, and that he received two booster shots in 2022. (ECF No. 1-5, PageID.38.)

Moreover, Petitioner has not alleged facts that support an inference that his present conditions of confinement evidence deliberate indifference to a risk of harm. Even setting aside the fact that the risk that Petitioner faces today is not the same as the risk he faced in 2020 and 2021, Petitioner has failed to allege facts from which the Court could infer that, in light of the risk of harm he presently faces, there are no conditions of confinement sufficient to prevent irreparable injury.

Petitioner focuses on the MDOC's failure to provide a setting that permits the "social distancing" recommended by Centers for Disease Control and Prevention (CDC) guidelines. Petitioner is plainly correct that incarceration limits the ability to comply with the CDC's recommended spacing guidelines. But that is not the product of some failure in the MDOC's response to the pandemic; it is the very premise of that response. As the United States District Court for the Eastern District of Michigan noted in *United States v. Kennedy*, 449 F. Supp. 3d 713, 716 (E.D. Mich. 2020):

> On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[ ] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html [Hereinafter "CDC Guidance 3/23/2020"]. Specifically, the CDC noted that many detention conditions create a heightened risk of danger to detainees. These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). *Id*.

*Kennedy*, 449 F. Supp. 3d at 715–16.

Despite the difficulty in addressing the risk of COVID-19 transmission in the prison setting, the MDOC did not sit idly by. MDOC Director Heidi Washington issued a series of Director's Office Memorandums (DOMs) addressing the risks posed by the pandemic and the MDOC's efforts to mitigate that risk. The Court notes that the MDOC issued its first COVID-19 DOM on April 8, 2020, and issued multiple revised DOMs on the subject to limit the threat posed by COVID-19.[4] *See, e.g.,* MDOC DOM 2020-30 (eff. Apr. 8, 2020) (mandating multiple protective measures including the wearing of masks by prisoners and staff, screening of all individuals before entering prison facilities, keeping of social distance, restricting visits and phone calls, and limiting transfers and cell moves); DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer). There have been many subsequent revisions. The present COVID-19 DOM, DOM 2023-16R, was issued on February 24, 2023.

Although there have been changes, the DOMs generally call for the wearing of personal protective equipment, screening of individuals before entering a facility, social distancing (to the extent practicable), the creation of isolation and quarantine areas—as resources permit—for

---

[4] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an "unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b). The facts noticed are the issuance of the DOMs, not necessarily the compliance of MDOC officials with the requirements of the DOMs.

prisoners who tested positive and prisoners under investigation for having COVID-19, isolation of the personal property of positive prisoners and prisoners under investigation, limitations of visitation and programs, the use of alcohol-based sanitizers and wipes by staff, limited transfers and cell moves, testing, adequate soap for hygiene and cleanliness, the use of bleach under staff supervision, no prisoner co-pays for COVID-19 testing and management, and remote work by staff when possible. As the risk of, and consequences from, infection have changed over time, the requirements have been relaxed.

The personal protective equipment, the cleaning, the increased efforts to maintain hygiene, the quarantine and isolation requirements, the limits on transfer, the testing, the screening—all of the other elements mandated by the DOMs are intended to address the risk of COVID-19 transmission that is simply inherent in the congregate setting of a correctional facility. The fact that the MDOC could not ensure proper spacing at all times does not, therefore, suggest that the MDOC was deliberately indifferent to the risk of COVID-19 transmission.

Although Petitioner points out additional steps the MDOC could have taken, that is not the standard. The Eighth Amendment does not require that prison officials take every possible step to mitigate a risk. *Wilson*, 961 F.3d at 844. Petitioner, therefore, has failed to present a meritorious claim for habeas corpus relief, and the Court will dismiss his petition.[5]

---

[5] Plaintiff also references that his continued incarceration violates the Ninth and Fourteenth Amendments, the Privileges and Immunities Clause set forth in Article IV of the Constitution, and the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). (*See* ECF No. 1.) The Ninth Amendment, however, "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). Moreover, as a convicted inmate, Petitioner cannot rely upon the Fourteenth Amendment, as the Fourteenth Amendment's Due Process Clause applies to claims brought by pretrial detainees regarding their conditions of confinement. *See Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018). Petitioner does not explain, and the Court does not discern, how the Privileges and Immunities Clause, which states that "[t]he citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," entitles him to habeas relief. *See* U.S. Const. art.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons the Court has dismissed the petition, the Court

---

IV, § 2. Finally, Petitioner has not alleged facts from which the Court could infer that Respondent discriminated against him because of his disability in violation of the ADA and RA. *See Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132); *see also* 29 U.S.C. § 794(a).

concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition for failure to raise a meritorious federal claim and an order denying a certificate of appealability.

Dated: April 17, 2023           /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE